**BARTHEL LEGAL, APC**
Nicholas Barthel, Esq. (319105)
nick@barthelbarthel.com
2173 Salk Ave., Ste. 250
Carlsbad, CA 92008
Telephone: (760) 259-0033
Facsimile: (760) 536-9010

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**CHANDRA DEL CARLO,** as the Conservator of the Person and Estate of **RAINI DEL CARLO**,

*Plaintiff*,

v.

**VESTWELL STATE SAVINGS, LLC; and CALABLE,**

*Defendants*.

Case Number:

**PLAINTIFF'S COMPLAINT FOR DAMAGES FOR VIOLATIONS OF**

1. **ELECTRONIC FUNDS TRANSFER ACT**
2. **CALIFORNIA UCC ARTICLE 4A**
3. **COMMON LAW CONVERSION**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

1. Plaintiff is a victim of unauthorized transactions.

2. On April 22, 2024, Plaintiff Chandra Del Carlo ("Plaintiff") became aware of a fraudulent transfer from their account with Defendants ending in 5695 (the "Account").

3. The amount transferred out of the Account totaled $8,200.00 (the "Stolen Funds") plus bank charges for wire transactions.

4. Plaintiff promptly and repeatedly contacted Defendants regarding the disputed transaction and provided supporting documentation, but to no avail.

5. Plaintiff brings claims against Defendants for violations of Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 et seq. (EFTA); Article 4-A of the California Uniform Commercial Code; and Common Law Conversion.

## PARTIES

6. Plaintiff Chandra Del Carlo and Raini Del Carlo are natural persons and citizen of Loyalton residing in Sierra County, CA.

7. Plaintiff Chandra Del Carlo is the Conservator of Plaintiff Raini Del Carlo.

8. Each Plaintiff is a "consumer" as defined by each of the relevant statutes.

9. At all times relevant, the Account was used for personal, family, or household purposes.

10. Respondent Vestwell State Savings, LLC ("Vestwell") is a New York Corporation formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by each of the relevant statutes.

11. Respondent CalABLE is a State of California tax-advantaged savings and investment plan, and is a financial institution as defined by each of the relevant statutes.

## FACTUAL ALLEGATIONS

12. Plaintiff received her CalABLE quarterly statement ending March 31, 2024, in early April 2024.

13. On April 22, 2024, after being unable to log in to her CalABLE online account,

Plaintiff called CalABLE's customer service department and discovered an unauthorized ACH withdrawal of $8,200 posted February 28, 2024 (the "Unauthorized Transaction").

14. Plaintiff immediately disputed the Unauthorized Transaction with Kyle Gram, a call center supervisor, who advised Plaintiff that he would send a report to the Compliance Department and that Plaintiff should file a police report.

15. Plaintiff contacted the Sierra County Sheriff's Office the next day, April 23, 2024, and reported the Unauthorized Transaction.

16. On information and belief, shortly before the Unauthorized Transaction, the email, phone number, and contact bank was changed on the Account.

17. Plaintiff did not authorize any change to the email, phone number, or contact bank on the Account.

18. Plaintiff did not authorize anyone else to make those changes.

19. Plaintiff was never contacted by either Respondent to verify those changes to the Account.

20. Plaintiff thereafter disputed the Unauthorized Transaction with the Federal Trade Commission ("FTC").

21. By email dated May 22, 2024, David Bell from Vestwell wrote to Plaintiff denying her dispute of the Unauthorized Transaction, claiming that they were informed about the Unauthorized Transaction “almost 60 days later”, on April 22.

22. Mr. Bell went on to say that they locked the Account on February 29, 2024 - after the Unauthorized Transaction, but before Plaintiff was aware of the theft.

23. On May 22, 2024, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB") to dispute the Unauthorized Transaction.

24. By letter dated May 23, 2024, Plaintiff disputed the Unauthorized Transaction in writing to Defendants, including supporting documents.

25. By letter dated July 1, 2024, John Cuilwik, Vestwell's Director of Risk, Compliance & Control, denied Plaintiff's claim to refund the Unauthorized Transaction.

26. Despite Vestwell's unwillingness to refund Plaintiff the Unauthorized Transaction,

Mr. Cuilwik recognized that "Based on our investigation ... the withdrawal was performed by an unauthorized third party."

27. To date, Defendants have refused to reimburse Plaintiff the Unauthorized Transaction.

**FIRST CAUSE OF ACTION**

**Electronic Fund Transfers Act, 15 U.S.C. § 1693 et seq.**

28. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

29. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendants bear the responsibility for unauthorized transfers and withdrawals such as the ones in question.

30. Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-

(1) $50; or

(2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

31. Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

32. This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. 1693g(a)(2).

33. The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

(b) Limitations on amount of liability. A consumer's liability for an unauthorized

electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:

(1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.

(2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:

(i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and

(ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

34. Denials based on a consumer’s alleged negligence are expressly prohibited under the EFTA’s implementing regulations. See Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) (“Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.”)

35. Defendants’ stated basis for denial is invalid under the EFTA.

36. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized. 15 U.S.C. § 1693g(b).

37. Defendants cannot meet theirs burden of proof here, where Plaintiff:

a) Promptly disputed the transactions;

b) Provided details regarding the theft;

c) Provided a sworn affidavit;

d) Provided a police report;

e) Has no criminal history;

f) Has no history of filing false disputes; and

g) The thefts are inconsistent with Plaintiff's pattern of use.

38. Defendants also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d).

See CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

39. Defendants also violated the EFTA by failing to provide Plaintiff with notice of theirs right to request reproductions of all documents which Defendants relied on to conclude that an error did not occur, as required under 15 U.S.C. § 1693f(d).

40. As a direct and proximate result of Defendants' conduct, Plaintiff have suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

41. Defendants did not conduct a good faith investigation regarding the stolen funds.

42. Defendants did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiff provided to Defendants.

43. Specifically, Defendants' conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff's account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

44. As a direct and proximate result of Defendants' violations of the EFTA, Plaintiff are entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs

and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**

**California UCC Article 4A**

45. Plaintiff repeats and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

46. Pursuant to UCC § 4-A-202(1), "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."

47. UCC § 4-A-202(2) further provides:

If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if

(a) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and

(b) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

48. Defendants failed to establish and/or follow a commercially reasonable security procedure with regard to the Account.

49. Specifically, Defendants' security procedure fails to flag and hold obviously fraudulent and unauthorized transactions such as the ones at issue here.

50. The unauthorized transactions on the Account bore a series of characteristics that, when taken together, render the transactions suspect, and likely to be fraudulent.

51. For example, and without limitation, the transaction:

a. were entirely out of character with Plaintiff's history of account usage;

b. occurred on a new device not previously associated with the Account;

c. occurred via a new IP address not previously associated with the Account; and

d. occurred immediately after the password on the Account was reset.

52. Any commercially reasonable policy would have assessed this combination of troubling factors, flagged the transactions as suspect, and held or rejected the transactions as likely to be fraudulent.

53. Indeed, Defendants acknowledged the suspicious and unauthorized nature of these transactions based on this same information – all of which was available to it at the time of the transactions – but only after it processed the transfers.

54. Defendants also did not process the transfers in good faith. Specifically, Defendants' willful blindness to the many badges of fraud present here constituted bad faith acceptance of the unauthorized payment orders.

55. In sum, Defendants violated UCC § 4-A-202 by accepting unauthorized payment orders in connection with the Account, failing to establish and/or follow commercially reasonable security procedures, and not processing the transactions in good faith.

56. Plaintiff is therefore entitled to a refund of the full amounts of the unauthorized payment orders, plus interest.

## THIRD CAUSE OF ACTION

### Conversion

57. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

58. Plaintiff had a possessory right to the funds in the Account.

59. Under the circumstances set forth herein, the funds constituted personal property.

60. Defendants intentionally, and without authority, assumed and exercised control over Plaintiff's funds.

61. Defendants' dominion over the funds and interference with the funds was in derogation of Plaintiff's rights, including but not limited to Plaintiff's right to have the funds returned to them.

62. As a result of Defendants' actions, Plaintiff suffered actual damages, including but not limited to the amount of the funds converted.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seek judgment in their favor and damages against Defendants:

A. awarding Plaintiff actual damages, treble damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees; and

B. such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

**JURY DEMAND**

Pursuant to the United States' Constitution, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 4, 2025

**BARTHEL LEGAL, APC**

By: _/s/ Nicholas Barthel___
Nicholas R. Barthel, Esq
Attorney For Plaintiffs
https://www.barthelbarthel.com/